Argued and submitted September 30, reversed and remanded November 23, 1983

CHAMBERS et al,
*Respondents,*

*v.*

DISNEY et al,
*Appellants.*

(81-72; A26877)

672 P2d 711

George H. Proctor, Klamath Falls, argued the cause and filed the briefs for appellants.

Gary L. Hedlund, Klamath Falls, argued the cause and filed the brief for respondents.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

NEWMAN, J.

Van Hoomissen, J., dissenting.

## NEWMAN, J.

Defendants appeal from a judgment granting plaintiffs a road easement by prescription over defendants' real property.[1] Defendants argue that the evidence does not support the court's finding that the plaintiffs' use of the road over defendants' property was "adverse" for more than ten years. They also object to the location of a portion of the road, claiming that it will interfere with agricultural use in the future. They also contend that the court should have located an easement of necessity, as plaintiffs had requested in the alternative claim in their complaint, and determined defendants' compensation.

In 1977, plaintiffs purchased from Kinsel a 40-acre wooded tract surrounded by defendants' 9,600-acre ranch near Klamath Falls. The Kinsel family had owned the 40-acre tract since 1892. Defendants were two partners in a thirteen-person partnership that had owned the ranch since 1972.

The court found that a dirt road 20 feet wide crossed defendants' ranch and connected plaintiffs' tract with Highway 140, that plaintiffs and their predecessors in title had used the roadway for more than ten years in a manner that was "adverse" to the rights of defendants and their predecessors in title, and that plaintiffs, as owners of the dominant estate, had established an easement by prescription over the road. The court ruled, accordingly, that it could not consider plaintiffs' alternative claim for a way of necessity. ORS 376.180(9).

We review *de novo* and reverse. Because plaintiffs' evidence was not clear and convincing that their use and that of their predecessors was "adverse," plaintiffs did not sustain their burden of proof.

No member of the Kinsel family testified at trial. The record, however, shows that the family had owned the 40-acre tract for 85 years from 1892 to 1977 and had used the road for access to the tract. The record suggests that the road was substantially in its present location when the Kinsels purchased the tract in 1892 and that the road, or a portion of it, may have been part of a very old road from Linkville to Fort

---

[1] *See* map, p 693.

Klamath. There is no evidence that the Kinsels or plaintiffs ever constructed or improved any portion of the road.

Defendants and their partners purchased the ranch in 1974. Defendants, or their predecessors, at some times in the past had placed cinder and gravel on portions of the road and apparently graded a portion of it. The record does not disclose when, or how frequently, those improvements were undertaken. Defendants also used the road in the operation of the ranch. Defendants only tried to keep hunters, wood cutters and trespassers out but never refused access to the owners of the Kinsel tract. Before purchasing the tract, plaintiff James Chambers had used the road while working as a ranch hand and while hunting coyotes.

The state constructed Highway 140 and bisected defendants' ranch in 1972. The road to plaintiffs' tract then extended through the ranch from a point on Highway 140. Before the construction of the highway, the road to plaintiffs' tract across the ranch was longer. The state fenced the sides of Highway 140. Because the ranch owners raised cattle and crops on the ranch, they had installed at some time in the past locking gates at the junction of the road and the highway and at several locations along the road. There is no evidence in the record concerning the Kinsels' use of the gates. We can infer that the Kinsels could open the gates after they were installed in order to gain access to their tract. After plaintiffs purchased the tract in 1977, defendants provided them with keys, or the lock combinations, to open the gates. At that time, defendants purported to give them a revocable license to use the road. Plaintiffs did not ask for the license and assert that they have relied on the right of access which they claim the Kinsels had previously acquired from "adverse" use of the road.

In *Feldman et ux v. Knapp et ux,* 196 Or 453, 250 P2d 92 (1952), the court stated that if a servitude has been enjoyed during the period required for prescription, openly, continuously and uninterruptedly, a presumption arises, in the absence of any other explanation, that the use was adverse and under a claim of right. The burden is then upon the servient owner to show that the use was not adverse. *See also Annot.,* 170 ALR 776, 779. More recently, however, the court has been reluctant to find adverse use to support prescriptive easements. *See Wood v. Woodcock,* 276 Or 49, 554 P2d 151

(1976); *Boyer v. Abston,* 274 Or 161, 544 P2d 1031 (1976); *Trewin v. Hunter,* 271 Or 245, 531 P2d 899 (1975); *Thompson v. Scott,* 270 Or 542, 528 P2d 509 (1974); *Woods v. Hart,* 254 Or 434, 458 P2d 945 (1969).

In *Woods v. Hart, supra,* the court stated:

"In general the evidence discloses that the roadway in question had been in existence before either defendants or plaintiffs acquired their respective parcels of land. It is undisputed that plaintiff Robert Woods used the road and that defendants knew that he was using it. There is little more than this to show that the use was adverse or permissive. If this had been a situation where plaintiff himself had constructed the road through the land now owned by defendants without asking for the servient owner's permission, the act of building the road would give rise to a strong inference of an adverse use. Under such circumstances we have held that a presumption of adverseness is raised.[1]

"1* * * *Feldman et ux v. Knapp et ux,* 196 Or 453, 250 P2d 92 (1952).

"But Woods did not construct the road in question. He testified that on several occasions he shared in the work and expense of maintaining the road. That, however, would not necessarily establish that plaintiff was asserting a right to the road; it is equally inferrable that he contributed the work and money to compensate the servient owners for the privilege of using the way.

"Where one uses an existing way over another person's land and nothing more is shown, it is more reasonable to assume that the use was pursuant to a friendly arrangement between neighbors rather than to assume that the user was making an adverse claim. In these circumstances some courts have held that the servient owner is entitled to the benefit of a presumption that the use is permissive. * * *

"It is not necessary for us to decide whether we would adopt the view of these courts which recognize a presumption of permissiveness where the claimant makes a use of an existing way. Even if we were to hold that a presumption of adverseness arises in every case where one person uses a way across another person's land for the prescriptive period, the fact that the claimant's use is of an existing way and the use does not interfere with the owner's use is, in our opinion, enough to rebut the presumption of adverseness. Even if the

rebutted presumption is regarded as having some evidentiary value, it alone cannot preponderate in favor of plaintiff in the face of the equally strong or stronger inference of permissiveness favoring defendant arising from the use of an existing way." *Woods v. Hart, supra,* 254 Or at 436.

Subsequently, in *Trewin v. Hunter, supra,* the court stated:

"Plaintiffs and defendants own and reside upon adjoining parcels of land along the Applegate River in rural Jackson County, Oregon. For at least 40 years plaintiffs' predecessors in interest have used a road across defendants' land for ingress and egress to and from the nearest public road. Plaintiffs contend that this use was adverse and therefore sufficient to establish an easement by prescription. Defendants contend that the use was permissive.

"* * * * *

"Plaintiffs seek to prevail notwithstanding this lack of evidence by invoking the established rule that a showing of unmolested, continuous use for the prescriptive period gives rise to a presumption of adversity. In response to this contention, the trial court found that any presumption of adversity which may have arisen from plaintiffs' continuous use was rebutted by the fact that the road was used jointly by the owners of both the alleged servient and the alleged dominant estate. * * *

"In the present case there is no evidence to show whether the road was constructed by the owners of the dominant estate or by the owners of the servient estate. It is undisputed that the road was used over the years by the servient owners in connection with their farming operations on the servient estate. There was also evidence that the location of the road was changed along a part of its course by the servient owners. It is our opinion that when a road is used in common by the dominant and servient owner and there is no evidence to establish who constructed the road, it should be presumed that the servient owner constructed it for his own use. Plaintiffs having failed to carry their burden of proof, the decree of the trial court must be affirmed." 271 Or at 247.

Plaintiffs have not sustained their burden of proof. The record indicates that the road was in existence when plaintiffs and defendants acquired their respective tracts and as early as 1892. There is no evidence of who constructed the road, although plaintiffs and their predecessors used the road.

Defendants or their predecessors improved the road and also used it for working the ranch, although for how long the record does not disclose. Even if a presumption of adversity existed here, it was rebutted. *Woods v. Hart, supra.* The evidence of adversity is not clear and convincing.[2]

On remand the court should determine plaintiffs' claim for an easement of necessity. At that time the court and the parties can also address the joinder as defendants of other partners in the partnership owning the ranch.

Reversed and remanded.

**VAN HOOMISSEN, J.,** dissenting.

This is an action to establish a way of necessity or, in the alternative, a road easement by prescription across defendants' land. The trial judge granted plaintiffs a road easement by prescription and defendants appeal. On *de novo* review, I would affirm.

After viewing the property, the trial judge found that a dirt road crossing defendants' ranch connected plaintiffs' property with Oregon Highway 140, that plaintiffs and their predecessors in title had used that road for more than ten years in a manner adverse to the rights of defendants and their predecessors in title, exclusive and under claim of right, continuous and uninterrupted, and with knowledge that defendants were the servient owners. Further, the judge found that, by their use under claim of right, plaintiffs had established an easement by prescription to use the road.[1]

---

[2] In *Wood v. Woodcock,* 276 Or 49, 56, 554 P2d 151 (1978), the court stated:

"Easements by prescription are not favored by the law, 2 Thompson, Real Property § 335, at 154 (1961). Courts have held that uses of unenclosed or unemployed lands tend to be permissive in nature and that the claimant must affirmatively prove the adverse character of his behavior in such instances. 3 Powell, The Law of Real Property ¶ 413, at 481-84 (1975); Annot., 170 ALR 776, 820-23."

*See also Annot.,* 170 ALR 820, 823 ("unenclosed" means "unimproved"). The evidence is not clear as to when the ranch property was first improved or enclosed.

[1] The trial judge concluded that he could not consider plaintiffs' alternative claim for a way of necessity, because a way of necessity established under ORS 376.150 *et seq* may not be established if the petitioner could acquire an easement for access to a public road through other legal action. *See* ORS 376.180(9).

Defendants first contend that plaintiffs' use of the road was permissive. Easements by prescription are not favored. *Wood v. Woodcock,* 276 Or 49, 56, 554 P2d 151 (1976). In order to establish an easement by prescription plaintiffs were required to establish by clear and convincing evidence that their use of defendants' land was open, notorious and adverse under a claim of right for a continuous and uninterrupted period of ten years. *Thompson v. Scott,* 270 Or 542, 546, 528 P2d 509 (1974). Such use raises a presumption that it was "adverse," and the burden of proving that it was permissive was on defendants. *Feldman et ux. v. Knapp et ux.,* 196 Or 453, 470, 250 P2d 92 (1952); *Kondor v. Prose,* 50 Or App 55, 60, 622 P2d 741 (1981). I would agree with the trial judge that defendants failed to sustain their burden of proof on the issue of adverseness.

There is no evidence in the record as to who built the disputed road. The record does show that it was substantially in its present location in 1892 when the Kinsels purchased their tract. It is undisputed that the Kinsels used the road for ingress and egress to their tract without interruption from 1892 until 1977, when they sold the tract to plaintiffs.

There is *no* evidence in the record that the Kinsels' use of the disputed road was permissive. The only relevant evidence of permissiveness is found in the fact that, after plaintiffs purchased the tract in 1977, defendants purported to give them a revocable license to use the road. Plaintiffs did not ask defendants for a license. At trial, they asserted that their right to use the road was based on the right previously acquired by the Kinsels. Defendants' evidence, therefore, came nowhere close to rebutting the presumption of adverseness.

Defendants argue that plaintiffs' use of the disputed road was not calculated to give defendants "knowledge" of adverse use. Plaintiffs and their predecessors have used the disputed road and have crossed defendants' property for more than 90 years in a manner that is and has been exclusive and

under claims of right, continuous and uninterrupted, and with knowledge that defendants and their predecessors in title were the servient owners. Defendants' argument is that they did not know plaintiffs' use was adverse. However, plaintiffs' evidence shifted the burden to defendants to rebut the presumption that plaintiffs' use was adverse. Defendants' evidence failed to rebut that presumption.

Defendants also contend that the evidence does not support the trial court's finding that *they* were the owners of the servient estate. They argue that the servient estate is owned by 13 partners, of whom they are only two. There is evidence in the record that suggests the ranch is owned by defendants, their wives and children. Defendants did not raise this issue until after the trial had commenced. Facts concerning the ownership of the ranch were within defendants' knowledge, yet they failed to raise the issue of joinder or nonjoinder of their partners in a timely manner. The trial court did not address the issue, nor would I. Defendants' pleadings admit that they had an interest in the servient estate. As to these defendants, plaintiffs have established their right to a road easement.

In sum, as I read the record, the evidence that plaintiffs and their predecessors in title did, in fact, use the disputed road adversely to defendants and their predecessors in title was overwhelming and virtually uncontradicted. Furthermore, it is more than passing strange that none of the cases relied on by the majority was cited in the parties' briefs in this court except *Wood v. Woodcock, supra,* a water rights case that stands for the undisputed proposition that easements by prescription are not favored. On its facts, *Wood v. Woodcock* is inapposite. Its reference to "unenclosed and unemployed lands" and to "rights of way by prescription which were granted as a neighborly act or out of courtesy," 276 Or at 56, has no evidentiary basis in the record here.

The trial judge, who inspected the disputed road, implicitly found that plaintiffs had sustained whatever burden of proof they had. The record supports that conclusion. Accordingly, I dissent.

N

Oregon Highway 140

D. D. Land Company

Disputed Road

Klamath Falls City Limits

40A Chambers Property

D. D. Land Company