Argued and submitted May 8, reversed September 9, 1998

# John A. ARANA
## and Jeanne L. Arana,
### husband and wife,
*Respondents,*

*v.*

# Steven PERLENFEIN,
*Appellant,*

*and*

# Richard D. LEE
## and Marilyn J. Lee,
### husband and wife,
### Luella J. Knapp,
### United States National Bank of Oregon,
### a National Banking Association,
### as Trustee for the Estate of Rodney C. Steinke,
### A. Henry Ruechel,
### Trustee of the A. Henry Ruechel Revocable Living Trust,
### and Miesen Oil Company,
### an Oregon corporation,
*Defendants.*

(94C-12214; CA A96142)

964 P2d 1125

Dennis V. Messoline argued the cause and filed the briefs for appellant.

David A. Hilgemann argued the cause for respondents. With him on the brief was Graves & Hilgemann.

Before Edmonds, Presiding Judge, and Armstrong, Judge, and Warden, Senior Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Steven Perlenfein appeals from a judgment granting John and Jeanne Arana a prescriptive easement through an alley on Perlenfein's real property. Perlenfein argues that Aranas did not prove the requisite elements necessary to establish a prescriptive easement by clear and convincing evidence. On *de novo* review, ORS 19.415(3), we reverse.

Aranas and Perlenfein own property in Salem.[1] An alley runs north and south through the middle of the block in which their property lies and connects adjoining streets. Aranas have an apartment building on their property in the northerly portion of the block, and Perlenfein operates an auto repair shop on his property in the southerly portion of the block. In May 1994, Perlenfein built a fence across the alley that blocked Aranas and their tenants from using the alley to travel to the apartment building.[2]

As a result, Aranas brought this action to quiet title in themselves in the portion of the alley that crosses Perlenfein's property. They allege that between 1945 and 1994, they and their predecessors in interest acquired an easement by prescription through the alley. Perlenfein argues that no prescriptive right was acquired and that Aranas' and their tenants' use of the alley on Perlenfein's property was merely permissive. The trial court agreed with Aranas' position and granted a prescriptive easement along with related relief. This appeal is from the trial court's judgment making that declaration.

The evidence regarding the nature of the use of the alley is in conflict. Aranas purchased their property in 1986 from Don Huey. Huey had owned the Aranas' property since 1975 and lived on the premises from 1975 to 1986. He testified that he and the tenants who lived in the apartment building used the alley daily and that no permission was ever

---

[1] The other defendants in this case hold property interests in Perlenfein's property and are not parties in this appeal.

[2] Aranas and their tenants have access to the apartment building from an adjoining street.

asked for or received from anyone to use it. Huey also testified that Mike Steinke, Perlenfein's predecessor in interest, parked cars in the alley from time to time but that Steinke did not store cars there for long periods of time. Huey recalled one occasion when he had heard that Steinke was thinking about blocking the alley. Huey called his attorney and instructed him to stop Steinke from blocking the alley. Huey does not know whether the attorney ever contacted Steinke or what resulted except that Steinke at no time blocked the alley thereafter while Huey lived in the apartment building.

Aranas' use of the alley began in 1986. They do not recall the alley ever being blocked until Perlenfein built the fence. They saw City of Salem vehicles, Meals on Wheels vehicles and Steinke's tow trucks using the alley along with the tenants from their apartment building. Aranas maintained the alley only on their property, except that in 1987, they paid to have the entire alley graded with gravel. Another witness, Byron Wade, resided across the street from the alley from 1978 to 1986. Occasionally, he used the alley during that time. He never observed the alley completely blocked, although he saw "a lot" of vehicles use the alley. Those vehicles included vehicles from the apartment building, the fire department, the police department, City of Salem vehicles and the garbage truck. He also observed wrecked cars occasionally blocking part of the alley, but not so as to make the alley impassable.

Perlenfein purchased his property in 1993 from Steinke. Steinke had purchased the property from his grandfather in 1984 but had worked at the repair shop since 1971. During the time that Steinke operated the repair shop, he testified that he blocked the alley during the day by storing vehicles there. Before 1984, Steinke's grandfather had operated a truck repair business and also had stored large trucks on the property, which, according to Steinke, would sometimes block the alley. Steinke testified that, in his experience regarding the property, there had been only one person who complained about the alley being blocked. That person had been a tenant of the apartment building, and she had called the police after Steinke blocked the alley on one occasion. After the police arrived and determined that Steinke owned that portion of the alley, they took no action.

Steinke also testified that he "tried to keep [the alleyway] open, you know, when we could, when we had room." He said that he would not make any special arrangements to accommodate travel in the alley, but would move vehicles out of the alley when he had room to store them in other places. Steinke also testified that the garbage truck that serviced the area would drive down the alley once a week. When the alley was blocked, the truck operator would honk his horn and, if Steinke did not remove the obstruction, the truck would turn around. If Steinke got there before the truck left, he would remove the obstruction.[3] Perlenfein also called a number of witnesses who were customers of Perlenfein and Steinke. They all testified that when they had visited the property, the alley was blocked with cars that were waiting to be repaired.

▆▆▆ In order to establish a private prescriptive easement in the alley on Perlenfein's property, Aranas must demonstrate by clear and convincing evidence that they and their predecessors used it in an open, notorious and adverse manner for a continuous and uninterrupted period of ten years. *Thompson v. Scott,* 270 Or 542, 546-47, 528 P2d 509 (1974). Proof of the element of adversity requires evidence that, for the requisite ten-year period, the alleged adverse user claimed a legal entitlement to the use of the alley adverse to the property owner's interests as distinguished from a permissive use. *Boyer v. Abston,* 274 Or 161, 163, 544 P2d 1031 (1976) (holding that where the defendants' predecessor permitted hunters, miners and neighbors to use a road on the defendant's property that the plaintiff did not build, the non-exclusive character of the plaintiff's use militated against the claim of a prescriptive easement).

In general,

"where the dominant owner constructs and uses a road through the servient owner's land, there is 'a strong inference of an adverse use.' However, * * * '[w]here one uses an existing way over another person's land and nothing more is shown, it is more reasonable to assume that the use was pursuant to a friendly arrangement between neighbors

---

[3] The garbage truck driver testified that he did not recall the alley ever being blocked.

rather than to assume that the user was making an adverse claim.' " *Trewin v. Hunter*, 271 Or 245, 247, 531 P2d 899 (1975) (quoting *Woods v. Hart*, 254 Or 434, 436, 458 P2d 945 (1969)).

As the court explained in *Woods*,

" '[I]f the owner of the land opens a road across it for his own use and uses it and keeps it open for his own use, the fact that he sees his neighbor also making use of it under circumstances that in no way injures the road, or interferes with his own use of it, does not justify the inference that he is yielding to his neighbor's claim of right or that his neighbor is asserting any right.' " 254 Or at 437-38 (quoting *Anthony et al v. Kennard Bldg. Co.*, 188 Mo 704, 723-24, 87 SW 921 (1905)); *see also Hayward v. Ellsworth*, 140 Or App 492, 497, 915 P2d 483 (1996) (discussing the importance of who constructed the road and the inference that is created).

■     In this case, Aranas claim a prescriptive easement through an alley on Perlenfein's property that they did not construct. The trial court reasoned that the use of the alley by Aranas, their predecessors and their tenants created a presumption of adversity that Perlenfein failed to rebut.[4] In our view, the court's reasoning fails to recognize the import of the fact that the alley was not constructed by plaintiffs and their predecessors in interest. Although the court in *Woods* did not expressly create a presumption of permissiveness where a claimant makes use of an existing way, the court did hold that

"[e]ven if we were to hold that a presumption of adverseness arises in every case where one person uses a way across another person's land for the prescriptive period, the fact that the claimant's use is of an existing way and the use

---

[4] The trial court ruled:

"Likewise, as to the interference with the use of the property owned by [defendant], Mr. Steinke and their predecessors, the evidence indicated that the existence and use of the alley were a hindrance and [an] interference with the operation of their businesses, because it was more convenient for them to be able to store vehicles waiting for repair behind the shop and across the alley. Additionally, the existence of the alleyway and its use caused the owners of that property to move the vehicles out of the alley at night to protect them from vandalism. Therefore, the Court finds that there was sufficient evidence that the use of the alley was hostile and adverse and, further, that Defendants did not meet their burden of proof in overcoming the presumption of adverse use."

does not interfere with the owner's use is, in our opinion, enough to rebut the presumption of adverseness." 254 Or at 437.

In their brief, Aranas focus on the extent of interference with Perlenfein's use. They argue:

"[T]he evidence showed use of the alley easement interfered with use of the property by Defendant PERLENFEIN and his predecessor in interest, Michael Steinke. As the trial court· pointed out, both Mr. Steinke and· [Defendant] 'complained of vehicles going down the alley too fast.' * * * Mr. Steinke recalled moving vehicles three or four times to allow the sanitary service truck to come through. * * * In fact, as noted earlier, Plaintiffs' predecessor in interest, Don Huey, testified that in the early 1980's, Michael Steinke announced his intention to block the alley. When Mr. Huey learned of Mr. Steinke's intentions, Mr. Huey referred the matter to his attorney who advised Mr. Steinke that he had no right to do so. Thereafter, Mr. Steinke ceased his efforts to close the alley and it remained open and was continuously and regularly used until Defendant PERLEN-FEIN wrongfully closed it in 1994."

In our review of the record, we find no clear and convincing evidence that the referral by Huey to his attorney resulted in an interference with Steinke's use. After Huey went to his attorney, he "didn't hear any more about it." Steinke testified that he was never contacted by Huey's attorney and that he did not recall the incident. The evidence is as equally susceptive to an inference that Steinke voluntarily accommodated the use of the alley by others as it is to an inference that he submitted to a demand by Huey's attorney.

As to the use by the garbage truck, there is no evidence that Aranas instructed the truck driver to use the alley, and, thus, it is questionable whether the use of the alley by others assists Aranas in their claim of a private prescriptive easement.[5] Even assuming that the garbage truck's

---

[5] The significance of the use of the alley by vehicles owned by others than those in privity with Aranas is explained in *Thompson*, 270 Or at 551 (quoting 3 Powell, *Real Property* § 483, p 413 (1973)):

" 'If the claimant is only one of two, or several, or many, who make the user in question, it is perhaps inferable that all of these uses are permissive. In such a case the claimant must affirmatively prove the adverse character of his behavior.' "

use of the alley assists Aranas' claim of right, the garbage truck driver recalled no occasion when the alley was blocked. The evidence is scant that the garbage truck interfered with Steinke's use of the alley. Steinke testified that he may have moved vehicles about three or four times during the 22 years that he was associated with the property. In sum, the evidence regarding the use of the alley by the garbage truck is as consistent with a permissive use as it is with an adverse use.

Although Steinke testified that he disliked the fact that at times vehicles using the alley were going too fast, that fact by itself does not demonstrate a clear interference with his use of the alley. Steinke also testified that he would block the alley when he needed to store vehicles and that he "tried to keep [the alley] open, you know, when we could, when we had room." That testimony is corroborated by Steinke's and Perlenfein's customers and gives rise to the inference that Steinke and Perlenfein continued to make use of the alley whenever they wished. We conclude that any presumption of adversity that arose from the use of the alley across Perlenfein's property by Aranas, their predecessor and their tenants has been rebutted by the evidence that Perlenfein's and his predecessor's use of the property continued unimpeded.

In our evaluation of the evidence as a whole, we return to the requirement that Aranas must demonstrate the elements of a prescriptive easement by evidence that is clear and convincing or highly probable. Although Aranas, their predecessor in interest and the tenants of the apartment building used the alley continuously throughout the time period alleged, there is no clear and convincing evidence that their use was of the kind that the law would consider adverse. The alley preexisted their use and was available for anyone to use. The owners of the purported servient estate continued to use the alley from 1971 to 1994. Even if Aranas' use of the alley interfered with Perlenfein's use, Aranas were required to establish the element of adversity against Perlenfein's predecessor, Steinke, in order to show a prescriptive use for an uninterrupted period of use of 10 or more years, and they have not accomplished that task. After considering all of the evidence, we are not persuaded that Aranas have proven that it is highly probable that the use on which they rely was adverse as distinguished from being permissive.

In light of the above conclusion, we do not reach Perlenfein's other assignments of error.

Reversed.