Argued and submitted June 27, 2005, reversed on appeal and
on cross-appeal March 29, 2006

Wayne L. WEBB,
Jana L. Webb, and Delores Rhodig,
*Respondents - Cross-Appellants,*

*and*

Lavelle UNDERHILL,
*Respondent,*

*v.*

D. Wendell CLODFELTER
and Joyce E. Clodfelter,
husband and wife;
and Columbia River Equipment
Money Purchase Pension and Profit Sharing Plan
for the Benefit of Steven A. Prock,
*Appellants - Cross-Respondents,*

*and*

Ivan SKORO
and Karolina Skoro,
husband and wife;
Milan Skoro and Neda Skoro,
husband and wife;
and John W. Buether,
*Defendants.*

98-6265C; A122966

132 P3d 50

Joel S. DeVore argued the cause for appellants - cross-respondents Clodfelter & Columbia River Equipment. With him on the briefs was Luvaas Cobb.

Bradley V. Timmons argued the cause for respondents - cross-appellants Wayne Webb, Jana Webb, and Delores Rhodig. With him on the briefs was Dick, Dick & Timmons, LLP.

No appearance for respondent Lavelle Underhill.

Before Landau, Presiding Judge, and Brewer, Chief Judge,* and Armstrong, Judge.

---

* Brewer, C. J., *vice* Richardson, S. J.

LANDAU, P. J.

## LANDAU, P. J.

Defendants own land in rural eastern Oregon across which runs a road that has existed longer than anyone remembers. At issue in this case is who may use the road. The trial court determined that plaintiffs demonstrated that they had acquired a prescriptive easement over at least part of the road, although the court imposed certain conditions on plaintiffs' continued use of it and found that plaintiffs had trespassed on the part not subject to the easement. Defendants appeal, arguing that, because plaintiffs failed to establish that their use of the road was adverse, they failed to establish the elements of a prescriptive easement claim. Plaintiffs cross-appeal, arguing that the trial court erred in imposing conditions on their use of the road, in failing to grant a prescriptive easement over the additional section of the road, and in finding that they had committed trespass. We agree with defendants that the trial court erred in determining that plaintiffs had acquired a prescriptive easement over any portion of the road. We also conclude, however, that the trial court erred in finding that plaintiffs had committed trespass. We therefore reverse on both the appeal and the cross-appeal.

We begin with the appeal and the issue of the sufficiency of the evidence as to plaintiffs' prescriptive easement claim, reviewing the facts *de novo*. *Montagne v. Elliott*, 193 Or App 639, 92 P3d 731 (2004).

Plaintiffs own three parcels located west of a county road known as Buckley Road. In between plaintiffs' three parcels and Buckley Road are defendants' properties. Connecting plaintiffs' three parcels to Buckley Road is an access road. The access road begins at Buckley Road as a single "main access road." To the north of the main access road lies defendants Clodfelters' property, and to the south lies defendants Skoros' property. The main access road continues west across the Clodfelter property and, when it comes to a canyon, splits into what the parties have denominated the "north road" and the "south road." A bit further west, the north and south roads are connected by a "cut-off road," located on property owned by defendant Columbia River Equipment Money

Purchase Pension and Profit Sharing Plan (CRE). But both the north and south roads continue to the boundaries of plaintiffs' properties.

The main access road and the north and south roads have existed for longer than the parties can remember, and it is not known who built them. CRE's predecessor, John Buether, constructed the cut-off road, and Steven Prock rebuilt it after CRE acquired the property in 1995.

From 1943 until 1986, defendants, plaintiffs, and their predecessors used the roads for farm and ranch vehicles and equipment and for their own personal uses, including hunting. Around 1986, the parties began placing their tillable acreage into the Conservation Reserve Program, an erosion control program, which required them to plant grass seed and allow the land to revert to its natural state. This resulted in a significant reduction in the use of the roads. Conventional farming and ranching practices are no longer allowed, but the land continues to be managed for weed eradication and recreational purposes, including hunting.

Since 1959, plaintiffs or their predecessors have leased hunting rights to the Upland Bird Hunting Club, which consists primarily of members of the Teeny family. The club has a cabin across the highway and to the north of plaintiffs' northernmost parcel, Parcel 3. During every hunting season from 1959 until 1998, club members and their guests used the roads on defendants' properties—with varying frequency—for access to hunting areas with *plaintiffs'* permission and in accordance with what they believed to be the

terms of their hunting lease. Until 1995, however, they had no written permission from anyone to cross defendants' properties. In October 1995, plaintiff Wayne (Rocky) Webb gave the club a letter purporting to grant his permission for club members to cross all properties necessary for access to plaintiffs' properties. Over the years, the number of club members using the roads for access to hunting has varied from 10 to 25.

Defendants never objected to plaintiffs' use of the roads for farming or for their own personal uses, including hunting, although they were never happy about hunting club members using the roads. From about 1963 to 1970, defendants and their predecessors tried to exclude hunting club members from their properties, but, in 1970, the Clodfelters and CRE's predecessor decided to allow club members to use the roads if they agreed not to stray onto the properties themselves.

Defendants soon noticed, however, that club members did not stay on the roads. After a few years, all the defendant property owners agreed that they would permit non-owner hunters to use the roads only when escorted by a property owner. According to Wendell Clodfelter, that plan worked for almost 20 years, during which time—with one exception in 1977—he was unaware of club members crossing his property without permission.

In 1995 or 1996, Clodfelter noticed that the first locked gate on his property had been forced open and lifted off its hinges. He suspected hunting club members and decided to block their access. He changed the locks on the gate and put a farm implement across the road, but the problem continued. In 1997, Clodfelter filed a sheriff's report of "an ongoing problem" concerning use of the roads on his property. Clodfelter reported that he had never given plaintiffs a legal right-of-way over his property. Clodfelter believed that members of the hunting club had caused damage to his property by frightening wildlife, bringing in noxious weeds, crossing freshly seeded ground in the fall, and rutting wet roads. In 1998, he put in a new gate, which has not been breached.

In October 1998, plaintiffs responded by initiating this action, in which they requested a declaration that, over many years of continuous use, they acquired a prescriptive

easement over all of the roads on defendants' properties, for the benefit of Parcels 1 and 3. Defendants filed a counterclaim, asserting that plaintiffs had trespassed by permitting members of the hunting club to drive vehicles onto defendants' properties without permission. Shortly after the filing of the complaint, the trial court entered a preliminary injunction prohibiting plaintiffs from making use of the cut-off road that runs on CRE's property between the north and south branches of the access road.

The case was tried to the court. The trial court determined that plaintiffs had established a prescriptive easement for both farming and fee hunting purposes over the main access road and the north and south roads, but declined to find a prescriptive easement for use of the cut-off road. The court also determined that CRE had established its counterclaim for trespass because plaintiffs had used the cut-off road in violation of the court's preliminary injunction.

■ On appeal, defendants argue that the trial court erred in concluding that plaintiffs met their burden of proof to establish the existence of a prescriptive easement. In particular, they argue that the trial court erred in concluding that plaintiffs established the element of adverseness. According to defendants, because the subject of the dispute is a preexisting road, they are entitled to a presumption that plaintiffs' use of it was permissive, and plaintiffs failed to rebut that presumption. Plaintiffs respond that there is no presumption of permissive use and that, in any event, they rebutted it.

■■ The applicable rules are familiar. Easements by prescription are not favored by the law. *Wood v. Woodcock*, 276 Or 49, 56, 554 P2d 151 (1976). To establish the existence of such an easement, plaintiffs must show, by clear and convincing evidence, that they or their predecessors used the roads in an open, notorious, adverse, and continuous manner for a period of ten years. *Thompson v. Scott*, 270 Or 542, 546, 528 P2d 509 (1974).

It is generally said that the open and continuous use of a road for the prescriptive period is presumed to be adverse and under a claim of right. *See, e.g., Feldman et ux. v. Knapp et ux.*, 196 Or 453, 473, 250 P2d 92 (1952); *Beebe v. DeMarco*,

157 Or App 176, 180, 968 P2d 396 (1998), *rev den*, 328 Or 293 (1999); *Nice v. Priday*, 137 Or App 620, 625, 905 P2d 252 (1995), *rev den*, 322 Or 644 (1996); *House v. Hager*, 130 Or App 646, 651, 883 P2d 261, *rev den*, 320 Or 492 (1994). It is further generally said that the servient owner has the burden to rebut the presumption. *Feldman*, 196 Or at 472.

■ When the road is preexisting, however, and the claimant's use is nonexclusive, that presumption may be rebutted by proof that the claimant's use of the road did not interfere with the servient owner's use of the road. In *Woods v. Hart*, 254 Or 434, 437, 458 P2d 945 (1969), the Supreme Court said that, assuming the existence of a presumption of adverseness, the servient owner's burden of rebuttal may be satisfied by showing "that the claimant's use is of an existing way and the use does not interfere with the owner's use."

Our most recent opinions have followed that lead in holding that the use of an existing road of unknown origin over the servient owner's property in a way that does not interfere with the servient owner's use will defeat a presumption of adverseness. In *Petersen v. Crook County*, 172 Or App 44, 53, 17 P3d 563 (2001), we explained the effect of overcoming the presumption:

> "Where, as here, (1) a road is used in common by the owners of a putative servient estate and by others; (2) there is no evidence to establish who constructed the road; and (3) the evidence does not establish that the common use interfered, for the requisite period, with the servient owner's use, the claimants of prescriptive rights have not carried their burden of proof. *Trewin v. Hunter*, 271 Or 245, 247-48, 531 P2d 899 (1975); *see also Arana v. Perlenfein*, 156 Or App 15, 20-21, 964 P2d 1125 (1998); *Read v. Dokey*, 92 Or App 298, 301, 758 P2d 399 (1988)."

*See also R & C Ranch, LLC v. Kunde*, 177 Or App 304, 312, 33 P3d 1011 (2001), *modified on recons*, 180 Or App 314, 44 P3d 607 (2002) (presumption of adverseness that arises from open and continuous use of a road for ten years may be rebutted "by proving that the claimant was merely using an existing road that did not interfere with the defendant's use or by proving that the use was permissive in some other way").

Some cases go so far as to state that, if the road on the servient property is of unknown origin and is commonly used by all parties, there simply is no presumption of adverseness in the first place. In *Trewin v. Hunter*, 271 Or 245, 248, 531 P2d 899 (1975), for example, the Supreme Court explained that when there is no evidence of who constructed a commonly used road, "it is presumed that the servient owner constructed it for his own use," thereby establishing that the neighbor's use is permissive, not adverse. Similarly, in *Boyer v. Abston*, 274 Or 161, 544 P2d 1031 (1976), the court held that when the use of a road is nonexclusive, its origin is unknown, and the claimant did not use the road so as to injure it or interfere with the defendant's use, the claimant has failed to establish adverse use.

In this case, it matters not which way we characterize the applicable rule because, under either characterization, defendants prevail.

Defendants offered persuasive evidence that plaintiffs' use of the roads was permissive. It is not disputed that, during the entire prescriptive period, defendants never objected to plaintiffs' use of the roads for farming or for their own personal uses, including hunting. There is also evidence that, despite defendants' general displeasure with nonowners traveling their roads, they agreed to allow club members to use the roads if they were escorted by plaintiffs. In view of the nonexclusive nature of plaintiffs' use and the evidence of the conditional permission given by defendants, we are persuaded that, during most of the requisite period before the filing of the claims in 1998, club members' use of the roadways on defendants' property was permissive.

Plaintiffs emphasize the evidence of hostile relations between club members and defendants over the years, damage to the roads, and the fact that club members did not seek out defendants' permission to use the roads because they did not believe they needed it. However, for the prescriptive period, there is little evidence of adverseness in the record, and what there is is not clear and convincing. What the record shows is that defendants generally did not like hunting club members using the roads. But for the 18 years preceding 1995, defendants and hunting club members did not see

much of each other at all and rarely, if ever, spoke. There is not evidence of a single hostile encounter between hunting club members and defendants between 1977 and 1995.

In any event, even assuming that hunting club members' use of the roads during that period was open and continuous and resulted in a presumption of adverseness, defendants rebutted the presumption. Despite plaintiffs' speculation that the roads might have been constructed by homesteaders, the actual origin of the main access road and the north and south roads is not known. The evidence at trial with respect to the cut-off road is that it was constructed by predecessor owners of the CRE property for their own use. More importantly, despite causing wear to roads and damage to locks and gates, plaintiffs never interfered with defendants' own use. Thus, defendants have established each of the factors that we described in *Petersen* to defeat the presumption of adverseness. Accordingly, we conclude that plaintiffs have failed to prove adverseness and that the trial court erred in determining that plaintiffs have established a prescriptive easement over the main access road and the north and south roads. The evidence with regard to the cut-off road on the CRE property is largely the same, except that the origin of that road is known—it was built by CRE's predecessor and rebuilt by Prock for his own use. In view of our conclusions, we do not address plaintiffs' arguments on cross-appeal concerning the extent and scope of the easement.

■ We turn to the remainder of the cross-appeal, in which plaintiffs contend that the trial court erred in entering judgment for CRE on its counterclaim for trespass. According to plaintiffs, the trial court based its conclusion on an erroneous finding that the alleged trespass occurred *after* a preliminary injunction had been entered when, in fact, the evidence at trial shows that the alleged trespass occurred *before* the preliminary injunction had issued.

In reviewing this assignment, pertaining to the sufficiency of the evidence on the trespass claim, we examine the record in the light most favorable to the trial court's findings to determine whether those findings are supported by competent evidence. *Gordon Creek Tree Farms, Inc. v. Layne*, 230

Or 204, 218, 368 P2d 737 (1962); *Sutherlin School Dist. No. 130 v. Herrera*, 120 Or App 86, 91, 851 P2d 1171 (1993).

The trial court stated in its corrected general judgment:

> "The Preliminary Injunction entered herein on November 16, 1998, provides: 'Plaintiffs are not allowed to make use of the cut-off road that runs north and south * * *.' Plaintiff Wayne L. Webb traveled on the Cut-off Road after entry of the Preliminary Injunction. Defendant Columbia River Equipment's claim for trespass has been proven. Defendant Columbia River Equipment incurred damages of $150 to its roads by Wayne L. Webb."

It is clear from the judgment, as well as from the court's written opinion, that the basis for the court's determination was its finding that, in traveling the cut-off road, Wayne Webb had violated the preliminary injunction. The undisputed evidence shows, however, that the alleged trespass occurred before the preliminary injunction had issued.

Defendants urge that we should nonetheless affirm the judgment because the trial court was right for the wrong reason—that the evidence presented at trial and other findings of the trial court support the trial court's conclusion that plaintiffs trespassed by permitting hunting club members to drive off the road and onto their properties. We are not in a position to do that. We do not make findings *de novo*, and we cannot assume that the trial court would have reached the same conclusion had it not been mistaken about the existence of the preliminary injunction. *See Woodley v. Allstead*, 49 Or App 875, 883 n 4, 621 P2d 612 (1980) ("actions for ejectment and trespass are actions at law which we do not review *de novo*"). The court's finding of a violation of the order did not—as defendants assert—merely "bolster" the trial court's conclusion. It was the basis for it. We therefore conclude that the trial court's findings with regard to the trespass claim are not supported by the evidence, and we reverse the judgment for defendant CRE on the cross-appeal.

Reversed on appeal and on cross-appeal.